*E-Filed 08/03/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>   v.<br>CHRISTOPHER BRYAN ABLETT,<br><br>      Defendant.<br>_____/ | No. C 09-00749 RS<br><br>**ORDER (1) DENYING DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT, (2) DENYING DEFENDANT'S MOTION TO STAY, AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR A BILL OF PARTICULARS** |

I. INTRODUCTION

This action flows from the violent death of Mark Guardado. A three count Indictment was filed against Christopher Bryan Ablett on July 23, 2009, charging Ablett with murder in aid of racketeering, use and possession of a firearm in a murder, and use and possession of a firearm in relation to a crime of violence. Defendant has filed motions: (1) to dismiss pursuant to Rule 7(c)(1) of the Federal Rules of Criminal Procedure for failure to identify specifics of the racketeering activity; (2) for a bill of particulars; (3) to dismiss Counts Two and Three pursuant to the introductory clause of 18 U.S.C. Section 924(c)(1); (4) for election or dismissal of Counts Two and Three because of multiplicity; and (5) to stay the federal proceedings to allow defendant to return to state court. The Government's response and defendant's reply to the motions have been filed, and the parties appeared for oral argument on June 15, 2010. For the reasons stated below, the Court denies defendant's motions to dismiss and motion to stay, and grants in part and denies in part defendant's motion for a bill of particulars.

//

//

No. C 09-00749
ORDER ON DEFENDANT'S MOTIONS

## II. BACKGROUND

On September 2, 2008, Guardado, the purported President of the San Francisco Chapter of the Hell's Angels, was shot and killed in San Francisco, California. The San Francisco Police Department had reason to believe an individual from an alleged rival motorcycle gang, the Mongols, was involved in the shooting, and on September 9, 2008 a San Francisco County Superior Court Judge issued an arrest warrant for Ablett. Shortly thereafter, Ablett made an initial appearance in state court.

On July 23, 2009, a federal grand jury returned an indictment charging Ablett with three crimes arising from the September 2, 2008 incident. Count One alleges that Ablett murdered Guardado for the purpose of gaining entrance to, maintaining, or increasing his position in the Mongols, an enterprise which purportedly engages in racketeering activity, in violation of 18 U.S.C. § 1959, the Violent Crimes in Aid of Racketeering Activity ("VICAR") statute. Count Two alleges that he used and possessed a firearm in furtherance of committing the murder in Count One, in violation of 18 U.S.C. § 924(j)(1). Count Three alleges that he used a firearm in furtherance of the crime of violence in Count One, in violation of 18 U.S.C. § 924(c)(1)(A).

After the grand jury returned the Indictment, the United States sought a Writ of Habeas Corpus ad Prosequendum as to Ablett. The defendant was removed from San Francisco County jail, and made his first appearance in this Court on July 29, 2009.

## III. DISCUSSION

A. <u>Motion to Dismiss Pursuant to Rule 7(c)</u>

Ablett argues that Count One should be dismissed because the Indictment fails to identify the time and place of the racketeering activity allegedly engaged in by the Mongols, the identity of the victims of such activity, or what the phrase "times relevant to this Indictment" means. Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise and definite written statement of essential facts constituting the offense charged." Fed. R. Crim. Proc. 7(c)(1). "Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged." *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) (citing *U.S. v.*

*Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)).  A "bare bones" indictment that employs the statutory language alone is "'quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'"  *United States v. Fernandez*, 388 F.3d 1199, 1219-20 (9th Cir. 2004) (citing *Woodruff*, 50 F.3d at 676).  Although the Indictment here is indeed bare bones, it tracks the VICAR statutory language and is sufficiently complete to defeat dismissal.

VICAR proscribes the commission of violent crimes "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  18 U.S.C. § 1959.  To prove a VICAR violation, the government must establish that: (1) the criminal organization exists; (2) the organization is a racketeering enterprise; (3) the defendant committed a violent crime; and (4) the defendant acted, at least in part, for the purpose of promoting his position in the racketeering enterprise.  *United States v. Bracy*, 67 F.3d 1421, 1429 (9th Cir. 1995) (citing *United States v. Vasquez-Velasco,* 15 F.3d 833, 842 (9th Cir.1994)).

In *United States v. Fernandez*, the defendants argued that an indictment failed to plead adequately the requisite motive and intent for a VICAR violation.  388 F.3d at 1219.  The Ninth Circuit held that the indictment, which alleged generally that the violation was committed for the "purpose of maintaining and increasing the positions of the specified defendants in the Mexican Mafia," tracked the required elements of the VICAR statute and was therefore sufficient.  *Id*. at 1220.  Similarly, the Indictment here sufficiently tracks the statutory language.  The Indictment alleges that, "[o]n or about September 2, 2008,… as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Mongols, and for the purpose of gaining entrance to and maintaining and increasing his position in the Mongols, an enterprise engaged in racketeering activity, the defendant… unlawfully and knowingly did murder Mark Guardado."  The fact that the Indictment does not specify the time, place, or particulars of the Mongols' alleged racketeering activity does not deprive the defendant of his ability to prepare a defense or to plead double jeopardy against a later prosecution.  *See United States v. Toliver*, No.2:06-cr-00234-PMP-GWF, 2007 WL 923561, at \*4-6 (D. Nev. Mar. 23, 2007), *aff'd*, 2010 WL 2034766 (9th Cir. 2010) (finding that the Government need not identify specific

1  individuals who are members of a racketeering enterprise, and that an indictment provided sufficient
2  notice under Section 1959 by alleging that "[the racketeering enterprise] was an existing enterprise
3  engaged in racketeering activity when the Defendants committed the alleged [murder] on September
4  13, 2004"). Simply put, Section 1959 does not require the Government to prove a pattern of
5  racketeering activity, but rather that the Mongols existed as a criminal enterprise engaged in
6  racketeering on September 2, 2008, and that Ablett murdered Guardado at least in part for the
7  purpose of promoting his position within that enterprise. *See Bracy*, 67 F.3d at 1429-1430. The
8  Indictment alleges these elements in sufficient, albeit barebones, fashion.

9  Ablett relies on *United States v. Cecil* in arguing that the Indictment fails adequately to
10 allege a specific time period for the racketeering activity. 608 F.2d 1294 (9th Cir. 1979). In *Cecil*,
11 the defendants were charged with conspiracy to distribute controlled substances in a two paragraph
12 indictment that alleged no overt acts and failed to specify a time frame for the very conspiracy for
13 which the defendants were charged. *Id*. at 1297. Unlike the *Cecil* indictment, however, the
14 Indictment here alleges a specific VICAR act - the murder of Guardado - committed on September
15 2, 2008. In other words, this case is distinguishable from *Cecil* in that there is little uncertainty as to
16 the time frame of the alleged VICAR violation.[1] Moreover, as the Ninth Circuit has clarified,
17 "[u]ncertainty regarding a conspiracy's beginning and ending dates does not render an indictment
18 fatally defective so long as overt acts alleged in the indictment adequately limit the time frame of
19 the conspiracy." *United States v. Forrester*, 2010 WL 2977722, at *8 (9th Cir. Jul. 30, 2010)
20 (quoting *United States v. Laykin*, 866 F.2d 1534, 1542 (9th Cir. 1989)). Therefore, as the
21 Indictment adequately tracks the language of the statute and sufficiently informs the defendant of
22 the date of the alleged VICAR offense, defendant's motion to dismiss Count One pursuant to Rule
23 7(c) must be denied.

---

[1] In addition, the district court in *Cecil* recognized that the indictment was seriously deficient, but determined that the deficiencies were remedied in the granting of a bill of particulars. 608 F.2d at 1296. The Ninth Circuit, however, explained that a bill of particulars cannot save an invalid indictment because, if it could, defendants would be denied a basic protection of grand jury proceedings in that they could potentially be convicted on facts not found by, or even presented to, the grand jury. *Id*. at 1297 (citing *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979)). Although the Court here grants certain specific requests in Ablett's motion for a bill of particulars, those requests clarify particular areas of ambiguity in the Indictment and are not designed to remedy any perceived deficiencies.

B.   Motion for Bill of Particulars

In the event his motion to dismiss the VICAR count is denied, Ablett requests that the Court direct the Government to file a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, on the grounds that the Indictment is vague and includes a number of ambiguities.  The decision to grant or deny a bill of particulars rests within the trial court's discretion, and is appropriate where an indictment is ambiguous such that a defendant needs clarification in order to prepare a defense.  *U.S. v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (citations omitted).  "[A bill of particulars] is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy."  *Id*.  In other words, the purpose of a bill of particulars is to clarify ambiguities in an indictment, not to serve as a replacement for discovery requests.  *Id*.; *see also*, *United States v. Ryland,* 806 F.2d 941, 942 (9th Cir.1986) ("[a] defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case"); *U.S. v. Giese*, 597 F.2d 1170, 1180-1181 (9th Cir. 1979) ("full discovery obviates the need for a bill of particulars").

Ablett seeks ten separate requests in his motion for a bill of particulars.[2]  As explained below, the motion will be granted as to a limited number of those requests which operate to clarify ambiguities in the Indictment.  Besides those specific enumerated requests, defendant's motion for a bill of particulars is otherwise denied.

With respect to bill of particulars request (a), the Government shall clarify in paragraphs 1 and 4 of the Indictment the time period encompassed within the phrase "[a]t all times relevant to this Indictment."  While the Indictment refers to the murder of Guardado on September 2, 2008, it also refers to ongoing criminal conduct by the Mongols gang, and is therefore vague and warrants clarification in order to put defendant on notice and prevent surprise at trial.  With respect to bill of particulars request (f), the Government shall also clarify the precise offense or other acts included

---

[2] In support of his motion for a bill of particulars, Ablett makes a number of references to *United States v. Cerna*, in which the Court ordered the Government "to provide a limited bill of particulars to clarify ambiguities and certain excessive generalities."  No. CR 08-0730 WHA, 2009 WL 2998929 at *2 (N.D. Cal. Sept. 16, 2009).  *Cerna*, however, is a markedly different scenario from this case, alleging 53 counts against 31defendants, including a number of conspiracy counts for which the specific requests as to the bill of particulars related.  *Id*.

within the phrase "among other things" in paragraph 1 of the Indictment, within the phrase "include, but are not limited to" in paragraphs 5 and 6 of the Indictment, in the word "includes" in paragraph 6(a) of the Indictment, and in the word "including" in paragraphs 6(a) and 7 of the Indictment. Although these words and phrases do not relate to Ablett's charged conduct, but rather to the ongoing criminal activities of the Mongols gang, they leave open the possibility of other unidentified conduct that may be introduced and therefore are sufficiently vague to pose a danger of surprise at trial. Accordingly, the Government must clarify these words and phrases and must place boundaries in its response to the bill of particulars requests around the open-ended terms identified above. *See U.S. v. Diaz*, No. CR 05-00167 WHA, 2007 WL 196752 at *5 (N.D.Cal. Jan 23, 2007).

C.  <u>Motion to Dismiss Based on Double Jeopardy</u>

Ablett seeks to require the Government to elect between Counts Two and Three of the Indictment. Alternatively, defendant alleges that Counts Two or Three should be dismissed because each arises out of the same predicate offense and are therefore multiplicitous, in violation of the Double Jeopardy clause of the Fifth Amendment. That constitutional protection provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Among other things, the "Fifth Amendment's prohibition on double jeopardy protects against being punished twice for a single criminal offense." *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). In *Blockburger v. United States*, the Supreme Court established a test to determine if two offenses are independent of each other for Double Jeopardy purposes. 284 U.S. 299, 304 (1932). Under this test, the court must determine "whether each provision requires a proof of fact which the other does not." *Id*.

Section 924(j) of Title 18 of the United States Code states, "[a] person who, in the course of violation of subsection (c), causes the death of a person through the use of a firearm" may be convicted under subsection (j)(1) if the "killing is a murder" as defined in 18 U.S.C. §1111. 18 U.S.C. § 924(j)(1). Therefore, in order to convict the defendant of Count Two, the Government must prove that Ablett used a firearm in committing a murder. 18 U.S.C. § 924(j)(1). Section 924(c) of Title 18 of the United States Code, on the other hand, provides that "[a] person who, during and in relation to any crime of violence or drug trafficking… uses or carries a firearm, or

who, in furtherance of any such crime, possesses a firearm" may be convicted under subsection (c)(1)(A). 18 U.S.C. § 924(c)(1)(A). To be convicted of Count Three, then, the Government must prove that Ablett used a firearm in furtherance of a crime of violence. Section 924(c) requires proof of a violent crime, but does not require proof of the specific crime of "killing" and/or "murder." Thus, as explicitly stated in the statute and under the *Blockburger* test, Section 924(c) is a lesser-included offense of Section 924(j) and does not invoke Double Jeopardy. *See United States v. Jimenez-Torres*, 435 F.3d 3, 10 (1st Cir. 2006) (Section 924(c)(1)(A) is a lesser-included offense of Section 924(j)(1) as a matter of law); *United States v. Catalan-Roman*, 585 F.3d 453, 472 (1st Cir. 2009) (same).

Moreover, Counts Two and Three are only multiplicitous as they pertain to sentencing. As the Ninth Circuit stated in *United States v. Jose*, "[p]rosecutors should not be discouraged from charging defendants with greater and lesser included offenses in separate counts under the same indictment." 425 F.3d 1237, 1247 (9th Cir. 2005); *see also*, *Ohio v. Johnson*, 467 U.S. 493, 500 (1984). If a jury finds a defendant guilty of both the greater and lesser of included offenses, the trial court "[should] not enter a final judgment of conviction on both offenses, unless Congress clearly indicates that it intended to allow multiple punishments." *Id*., 425 F.3d at 1247 (*citing Rutledge v. United States*, 517 U.S. 292, 302 (1996)). Counts Two and Three arise out of the same alleged act or transaction, and so a final judgment on both offenses may violate the Double Jeopardy clause. The prohibition against Double Jeopardy is inapplicable at this stage, however, where Ablett has yet to be tried. Accordingly, the Government is not required to elect between Counts Two or Three, and may proceed with both counts as alleged in the Indictment. Defendant's motion for election or dismissal of Counts Two and Three because of multiplicity, therefore, must be denied.

D.  <u>Motion to Dismiss Pursuant to the Introductory Clause of 18 U.S.C. § 924(c)(1)</u>

Ablett requests dismissal of Counts Two and Three based upon the Second Circuit's interpretation of the introductory clause of Section 924(c), which provides for mandatory sentencing enhancements where firearms are possessed, brandished, or discharged during the commission of a violent or drug trafficking crime "[e]xcept to the extent that a greater minimum sentence is otherwise provided." 18 U.S.C. § 924(c)(1)(A); *see United States v. Williams*, 558 F.3d 166 (2d

Cir. 2009); *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008). In *Williams* and *Whitley*, the Second Circuit held that the mandatory minimum sentence under Section 924(c)(1)(A) is inapplicable where the defendant is subject to a greater minimum sentence for another offense. The holdings in *Williams* and *Whitley* addressed sentencing, however, and therefore are inapposite here, where Ablett has not been tried, let alone convicted and sentenced, on any of the charged conduct.

Albett argues that the Second Circuit's use of the word "inapplicable" in these cases means that Sections 924(c) and 924(j) themselves are inapplicable here because he is also charged with an offense that carries a possible death sentence. Instead, these cases simply mean that, were the Court to follow the Second Circuit, Section 924(c)(1)(A)'s mandatory minimum sentence would be inapplicable if Ablett is convicted on all three counts. Indeed, both *Williams* and *Whitley* upheld the respective convictions - each defendant had been convicted of Section 924(c) as well as another offense for which there was a greater minimum sentence - but remanded the cases for resentencing. *Whitley*, 529 F.3d at 151 ("[w]e agree that the consecutive minimum ten-year sentence is inapplicable to Whitley because he was subject to a higher fifteen-year minimum sentence as an armed career criminal"); *Williams*, 558 F.3d at 176 (affirming conviction and remanding "for resentencing… with our holding that [defendant] is not subject to the mandatory consecutive five-year minimum for the firearm conviction under Section 924(c)"). Nothing in those cases suggests that a conviction, let alone an indictment, for a violation of Section 924(c) combined with a conviction of a separate charge carrying a greater minimum sentence would be inconsistent with the statute.

Alternatively, Ablett requests that, because the United States Supreme Court has granted certiorari to resolve a circuit split as to the interpretation of Section 924(c)'s introductory clause, the Court should await resolution of the issue before proceeding to trial. *United States v. Abbott*, 574 F.3d 203 (3rd Cir. 2009), cert. granted, *Abbott v. United States*, 130 S.Ct. 1284, 78 USLW 3254, 78 USLW 3430, 78 USLW 3437 (U.S. Jan 25, 2010) (NO. 09-479) and *United States v. Gould*, 329 Fed. Appx. 569 (5th Cir. Jul 29, 2009), cert. granted, *Gould v. United States*, 130 S.Ct. 1283, 78 USLW 3430, 78 USLW 3437 (U.S. Jan 25, 2010) (NO. 09-7073). As with *Williams* and *Whitley*, however, the circuit courts in *Abbot* and *Gould* addressed the imposition of consecutive mandatory

minimum sentences; they did not address whether a defendant was properly charged with a violation of both Section 924(c) and an offense which carries a greater minimum sentence. *Id*. Moreover, even Ablett's citation to *United States v. Gardner*, 2010 WL 801706 (2d Cir. Mar. 10, 2010), in which the Second Circuit suggested that the district court await resolution by the Supreme Court on the issue, fails to help him. Indeed, the court in *Gardner*, after confirming the conviction but remanding for resentencing, noted in dicta only that it would be "efficient use of judicial resources to await the Supreme Court's resolution of this issue before *resentencing* defendants in this case." 2010 WL 801706 at *3, FN 2 (emphasis added). That dicta in no way suggests that it would be improper to proceed to trial under the circumstances here. In short, *Williams*, *Whitley*, *Abbot*, *Gould* and *Gardner* are inapplicable on the Section 924 counts at this juncture, and therefore defendant's motion to dismiss Counts Two and Three must be denied.

E.    Motion to Stay

Ablett seeks to stay the federal proceedings so that he may return to state court and complete the related action in that forum. In support, he relies on the "anti-shuttling" provision of the Interstate Agreement on Detainers Act ("IADA"), and his right to a speedy trial. 18 U.S.C.A. App. 2 § 2, art. IV(e).

Congress enacted the IADA in order to "systematize the transfer of prisoners between different facilities and jurisdictions in connection with multiple convictions and charges." *United States v. Reed*, 620 F.2d 709, 711 (9th Cir. 1980) (*citing United States v. Ford*, 550 F.2d 732, 740-741 (2d Cir. 1977)). The statute was designed to remedy the "widespread disputes and delays which occurred before enactment of the agreement." *Id*. The IADA, however, only applies to a defendant who has "entered upon a term of imprisonment in a penal or correctional institution in a party state." 18 U.S.C. App. 2, § 2, Article III(a). Thus, a pretrial detainee does not have a "sufficient interest in the rehabilitation programs of his confining institution to justify invocation of the [IADA]." *Reed*, 620 F.2d at 711 (citations ommitted). Accordingly, the IADA does not apply to Ablett because, at the time the Indictment was filed, he had only made an initial appearance in state court. Ablett was not serving a "term of imprisonment" in a California correctional institution, and therefore cannot invoke the IADA. Moreover, federal and state prosecutors fully complied with the procedural

requirements for bringing federal charges against Ablett; the United States issued a Writ of Habeas Corpus ad Prosequendum as to Ablett, which the state honored. The Government and this Court have an interest in seeing these proceedings continue in a timely fashion, thereby affording Ablett his right to as speedy a trial as possible. Therefore, the motion to stay the federal proceedings to allow the state case to proceed first must be denied.

## IV. CONCLUSION

For the reasons stated above, defendant's motions to dismiss and motion to stay are denied, and defendant's motion for a bill of particulars is granted in part and denied in part. The Government is directed to respond to those granted bill of particulars requests within thirty days of the date of this order.

IT IS SO ORDERED.

Dated: 08/03/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE