*E-Filed 1/9/12 *

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 09-0749 RS |
| Plaintiff, | **ORDER RE: PRETRIAL MOTIONS** |
| v. | |
| CHRISTOPHER ABLETT, | |
| Defendants. | |

## I. INTRODUCTION

This Order resolves a number of pretrial motions filed by the parties in the above-captioned case. Defendant Christopher Ablett moves: (1) for a bill of particulars; (2) to suppress statements of defendant; (3) to dismiss the indictment; (4) to exclude drug identification expert testimony; (5) to suppress evidence that Mongols members discussed financing defendant's legal defense in this case; (6) to exclude expert testimony concerning fingerprint and autopsy evidence; (7) to suppress evidence of the 2002 incident in Laughlin, Nevada; (8) for disclosure of other statements by alleged coconspirators; and (9) to suppress coconspirator statements and evidence of alleged racketeering.[1]

---

[1] Ablett also filed a notice of his intention to rely on Federal Rule of Evidence 807 to admit certain statements made by witness George Jiminez. The government did not raise any specific objections to that evidence at oral argument, and as there are no issues to be resolved at this time, it need not be addressed.

The Government opposes defendant's motions and moves to strike several of them as untimely. Also pending before the Court is the government's motion for an anonymous jury. In consideration of the motions, the oral argument of counsel, and the record in this action, the motions are resolved as follows.

## II. DISCUSSION

### A. Defendant's motions

As a preliminary matter, the government objects and moves to strike as untimely several of Ablett's motions. It notes that all but three of Ablett's pending motions were filed after the December 19, 2011 deadline specified by the Court, and suggests that it has not had adequate time to respond. The prosecution therefore moves to strike those motions that it characterizes as especially late.[2] Of course, both parties were constrained by an abbreviated briefing schedule, and with the exception of one filing two days late, all of Ablett's motions were filed within hours of the deadline. Given the gravity of the issues raised by Ablett's motions, the Court cannot ignore the merits based on such a limited procedural defect. Accordingly, the motion to strike is denied.

#### 1. Motion for bill of particulars

Pursuant to Federal Rule of Criminal Procedure 7(f), Ablett moves for a bill of particulars specifying the particular weapon and acts the Government alleges constitute Charge Two, offense of assault with a deadly weapon. "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

Ablett argues that the Superseding Indictment in this case fails to set forth the second charge with sufficient particularity to provide him an opportunity to prepare a defense, in violation of the Fifth and Sixth Amendments. He notes that the autopsy of the alleged victim, Mark Guardado, revealed both knife and gunshot wounds, and suspects the government believes he used both a knife and a gun during a fight with Guardado on September 2, 2008. Ablett contends that he cannot

---

[2] They include Ablett's motion to suppress coconspirator statements and evidence of alleged racketeering, his motion to suppress coconspirator statements and evidence of alleged racketeering, and his notice under Federal Rule of Evidence 807. *See* Dkt. Nos. 208-210, 212.

adequately defend himself unless the government discloses, prior to trial, the alleged sequence of Guardado's injuries, as well as the wound to which Charge Two relates. At oral argument, Ablett's counsel also suggested that Ablett might face double jeopardy if the government were to prosecute this case on the basis of one weapon, and a second case on the basis of the other weapon. The government maintains that either weapon-related wound is sufficient to sustain the charge, that it is not obligated to limit itself to one or the other theory, and that in any case, it intends to sustain the charge on the basis of *both* weapons. *See United States v. Buckner*, 610 F.2d 570, 574 (9th Cir. 1979) ("[a]ssuming … all relevant facts were disclosed and available, the government is not obliged to disclose the theory under which it will proceed").

While there is no question that Ablett must be afforded adequate legal and factual information to mount an effective defense, he now knows the government intends to proceed on the theory that both deadly weapons were used against Guardado. Accordingly, his double jeopardy concerns are mooted. Additionally, Ablett's motion indicates that he is already in possession of all relevant factual material concerning Guardado's wounds, including the autopsy report, and photographs, for some time. Absent a showing of "surprise, prejudice, or an increased risk of double jeopardy stemming from the alleged shortcomings of the indictment," he is not entitled to more. *United States v. Burt,* 765 F.2d 1364, 1367 (9th Cir. 1985). *See also Long*, 706 F.3d at 1054 ("Full discovery will obviate the need for a bill of particulars"). As no such demonstration has been made here, his motion for a bill of particulars is denied.

2. <u>Motion to suppress statements by defendant</u>

Second, Ablett moves to suppress any statements he allegedly made to an undercover Government agent, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Darrin Kozlowski, at a Mongols party in June of 2008. Ablett asserts that although there is no record of any such evidence, the Government's disclosure of alleged coconspirator statements implies that Agent Kozlowski had a conversation with him about an agreement to purchase heroin. Although the prosecution reserves the right to introduce testimony that Agent Kozlowski observed Ablett at the gathering, and subsequently discussed a heroin deal with another partygoer, it agrees that there was no substantive discussion between Agent Kozlowski and Ablett and represents that it will not

seek to admit any such evidence of a conversation. Accordingly, the motion is denied as moot.

### 3. Motion to dismiss the indictment

Third, Ablett renews his motion to dismiss the indictment, incorporating by reference his four prior motions to dismiss and motion for a bill of particulars. Notably, however, he does not raise any new arguments at this time. Therefore, the motion is denied, for the reasons articulated in the orders denying Ablett's prior motions.

### 4. Motion to exclude drug identification expert testimony

Ablett seeks to exclude expert testimony offered to identify suspected illicit drugs on several grounds. His primary contention is that the proposed testimony lacks a reliable scientific basis and is thus inadmissible under either *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), or Federal Rule of Evidence 702. Secondarily, Ablett argues that the government's failure to disclose its laboratory protocols and related documentary materials precludes the Court from fulfilling its role as gatekeeper under *Daubert* and Federal Rules of Evidence 104(a) and 702.

In response to these attacks, the government replies that it has not destroyed the evidence nor is it opposed to affording defendant an opportunity to conduct independent tests, provided he engages a qualified expert and takes other required measures to ensure the safekeeping of the suspected drugs. Ablett's counsel indicated a willingness to proceed with independent testing, and requested the Court withhold ruling on his request for a *Daubert* hearing. Rather than leave the request pending, however, Ablett may renew the motion if and when he believes it is appropriate. For now, pursuant to their agreement at the hearing, the parties are directed to meet and confer about arranging for timely, independent testing of the evidence by defendant.[3]

Regardless of the outcome of his own testing, Ablett contends that the prosecution has improperly failed to disclose the laboratory's testing protocols and requests a ruling on this aspect of his motion. The government, by contrast, insists that internal drug testing protocols are not discoverable under Federal Rule of Criminal Procedure 16. Rule 16(a)(1)(D) provides, in relevant part:

---

[3] Attached to this order is a signed protective order permitting release of the evidence to defendant, subject to the appropriate safeguards.

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of ... scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known ... and which is material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

Thus, the question is whether the requested lab protocols fall within Rule 16(a)(1)(D)'s mandate.[4]

In *United States v. Iglesias*, the Ninth Circuit, interpreting this provision, confirmed that it requires the government to disclose lab reports and results. 881 F.2d 1519, 1523-24 (9th Cir. 1989). Hewing closely to the language of the Rule, however, the court declined to order the government to produce "internal documents," such as the lab technician's log notes, that are not "results or reports of … scientific tests or experiments." *Id.* In so holding, the court noted: "While we certainly respect defendants' rights to inspect and copy the actual results or reports of scientific tests, we are not willing to force the government to disclose every single piece of paper that is generated internally in conjunction with such tests." *Id*. *Iglesias*' reading of Rule 16 strongly suggests that Ablett's request goes too far. Protocols that govern the way in which tests are conducted do not qualify as "results" or "reports." *Id.* (citing *Black's Law Dictionary*, 1464, 1478 (4th ed. 1968)). As *Iglesias* explains, "the actual reports received by [defendant] are sufficient to enable her to adequately cross-examine the government chemist." *Id.* at 1524.

The cases Ablett invokes simply do not provide authority for the further proposition that in an ordinary criminal case, the government must, as a matter of course, document all internal lab operating procedures related to routine testing, in addition to producing the usual lab reports and results. *See, e.g. United States v. Cedrano-Arellano*, 332 F.3d 568, 570 (9th Cir. 2003), *and United States v. W.R. Grace*, 233 F.R.D. 586, 589-91 (D. Mont. 2005). Although Ablett argues that the protocols are "material to the preparation of the defense," under Rule 16(a)(1)(D), his interpretation

---

[4] Although the government argues that Rule 16(a)(2) bars discovery of such materials, that subsection provides: "Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Even putting aside that Rule 16(a)(1)'s disclosure requirements plainly trump 16(a)(1)'s limitations, there is no question that the testing protocols, whatever they may be, were not created "in connection with investigating or prosecuting the case" at bar, and, accordingly, Rule 16(a)(2) is inapposite.

of that phrase is strained. It is perhaps conceivable that disclosure might be warranted if the challenged testing procedures were in some way unusual, or there was evidence of "material" irregularity implicating *Brady*. Here, the government's chemists applied relatively routine methods of drug identification, and there is no suggestion that these were applied unreliably. *See Bullcoming v. New Mexico*, __ U.S. __, 131 S.Ct. 2705, 2711 n.1 (2011) ("Gas chromatography is a widely used scientific method of quantitatively analyzing the constituents of a mixture"), *and Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 152-53 (1999) (district courts possess discretionary authority "to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted"). Accordingly, his request for the disclosure of internal lab protocols will be denied pursuant to Rule 16.

### 5. Motion to suppress evidence regarding funding of Ablett's legal defense

Relying on Federal Rules of Evidence 402 and 403, Ablett moves to suppress evidence that the Mongols had a practice of paying to defend members who committed crimes to advance the organization, and further, that the Mongols' leadership contemplated doing so in this case. Agent Ciccone, as an expert witness, proposes to testify that the Mongols had such a policy, and Agent Kozlowski will testify that he attended a Mongols meeting where the Mongols' president stated that the organization would be paying and providing attorneys for Ablett. It is uncontested that the Mongols have not financed Ablett's defense in this case, or even approached defense counsel to that end, and the government represents it will stipulate to that fact. The prosecution concedes it does not know why funds were never actually solicited or paid. It speculates that the omission may be due to the fact that many in the Mongols leadership were themselves indicted shortly thereafter, or alternatively, that the Mongols learned Ablett would be provided with counsel free of charge, pursuant to the Criminal Justice Act. An alternative explanation, of course, is that the Mongols determined the alleged crime was not committed to advance the club's activities and therefore did not merit a legal defense financed by its members. As Agent Ciccone testified before the grand jury, the Mongols would not create a legal defense fund in such circumstances.

Under Rule 402, only relevant evidence is admissible. According to the prosecution, the evidence at issue is relevant to prove several required elements of the charged offense under the

Violent Crimes in Aid of Racketeering (VICAR) statute, 18 U.S.C. § 1959(a). To convict Ablett under that statute the government must show: "(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendant[ ] committed a violent crime; and (4) that [the defendant] acted for the purpose of promoting [his] position in a racketeering enterprise." *United States v. Banks*, 514 F.3d 959, 964 (9th Cir. 2008) (quoting *United States v. Bracy,* 67 F.3d 1421, 1429 (9th Cir. 1995)). In the first instance, evidence that the Mongols adopted various rules concerning the defense of its members is undoubtedly relevant and probative of the allegation that the Mongols were an organized "enterprise" within the meaning of the statute, if not that the Mongols were engaged in racketeering.[5] *See* § 1959(b)(2) (defining "enterprise"). However, given that the government also intends to use the evidence to show Ablett committed the crime to advance the organization and his own standing within it, its admissibility for that further purpose must also be considered.

The VICAR statute requires that the defendant commit the charged offense "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." § 1959(a) (emphasis added). That element may be met if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Banks*, 514 F.3d at 965 (quoting *United States v. Pimentel,* 346 F.3d 285, 295-96 (2d Cir. 1992). Ablett insists that the evidence is irrelevant under Rule 402 and inadmissible under Rule 403 because no payments were ever made. However, the fact that the Mongols' leadership may have considered the crime to advance the organization's own purposes, may shed some light on Ablett's own understanding and intentions. Thus, the evidence is at least relevant. That said, the probative value of such evidence is open to debate. Whatever the Mongols' president may have thought of the alleged crime after it occurred, his belief would reflect Ablett's state of mind only indirectly, if at all. Additionally, the fact that funds were never collected or spent obviously undermines the premise that the Mongols concluded the murder advanced their cause in the first place. However,

---

[5] The government does not contend that it was illegal for the Mongols to finance the legal defense of members, or that doing so constitutes a predicate racketeering act.

1  because the defense is free to emphasize both of these points to the jury, the danger of unfair

2  prejudice or confusion is ameliorated, and the Rule 403 balancing test shifts in favor of admission.

3  That result is contingent on the government's stated willingness to stipulate that the Mongols never

4  actually solicited funds or made any payments to defend Ablett in this case, and more specifically,

5  that Ablett's defense counsel in this action have not received any funding from the Mongols. In all

6  other respects, however, Ablett's motion is denied.

6. <u>Motion to exclude fingerprint and autopsy expert testimony</u>

8  Ablett moves to exclude testimony offered by two expert witnesses for the Government, Dr.

9  John Smith and Officer Pamela Cunningham. (Dkt. No. 206). Dr. Smith conducted an autopsy on

10 Guardado, and proposes to testify as to the nature of his wounds and the cause of his death.

11 Cunningham is a prosecution fingerprint expert. The government made its initial disclosures

12 concerning both experts in the form of a four-page letter on July 6, 2011. This Court found the

13 disclosure to be inadequate under Federal Rule of Evidence 16, and ordered supplemental disclosure

14 on September 9, 2011. As of the date Ablett filed the instant motion to exclude, the government had

15 not complied with that order. Accordingly, Ablett moved to exclude the testimony under Rule 16,

16 and for sanctions. He argues that the failure to disclose is prejudicial to his defense.

17 After receiving Ablett's motion, the prosecution made supplemental disclosures. It

18 acknowledges that it neglected to make the required disclosures earlier, but insists that it did not

19 violate any Court order because no deadline for supplemental disclosure was imposed. The

20 prosecution explains that a change of government counsel, and Dr. Smith's relocation from the San

21 Francisco County Medical Examiner's Office to the Ventura County Medical Examiner's Office

22 prevented earlier consultation and disclosure of his proposed testimony. As the government points

23 out, however, defendant has been in possession of Dr. Smith's autopsy report and photographs of

24 the victim's body for years. As for expert testimony concerning fingerprints, the prosecution argues

25 that it made disclosures under Rule 16 immediately upon receiving the relevant information.

26 Initially, the government explains, it intended to offer Officer Cunningham merely to explain to the

27 jury that latent fingerprints are found on a minority of objects examined, and none were found here.

28 Now, however, the prosecution claims Officer Cunningham did in fact find one usable print, though

1 not from Ablett or any other relevant person. It maintains it immediately disclosed as much to the 2 defense. The prosecution also states that Officer Pauline Hnatow recovered two palm prints, alleged 3 to be Ablett's, from the saddlebags of his motorcycle, recovered from his parents' garage. These 4 discoveries were also disclosed immediately, according to the Government.

5 Had the government stood on its initial disclosures, Ablett's requested relief might well be 6 warranted. Now, however, the government has appropriately supplemented its disclosures. Ablett 7 does not (and, in fairness, could not) address the adequacy of the government's supplemental 8 disclosures under Rule 702 or *Daubert*. Nor does he argue that their timing has resulted in 9 prejudice. Accordingly, his motion to exclude the testimony, or for sanctions, must be denied 10 without prejudice.

11 7. Motion to suppress evidence of the 2002 incident in Laughlin, Nevada

12 Ablett renews his motion to suppress evidence of a 2002 incident in Laughlin, Nevada, in 13 which members of the Hell's Angels Motorcycle Club engaged the Mongols in a fight at a casino, 14 arguing that the government's current position is inconsistent with the position it took in an earlier 15 prosecution of Hell's Angels members. (Dkt. No. 207). The government seeks to introduce 16 evidence of the Laughlin episode to show that the Mongols are a racketeering enterprise, per the 17 VICAR statute. *See Banks*, 5124 F.3d at 964. Although the government offers to stipulate to the 18 fact that Ablett was not present at the Laughlin incident and was not even a Mongols member in 19 2002, it maintains that evidence of the Laughlin incident is relevant to its showing that, "(1) there is 20 a history of animosity between the two groups; (2) that history includes a violent melee that 21 occurred at Laughlin that involved violence on the part of both groups; and (3) the event at Laughlin 22 transformed what had previously been a dangerous rivalry into a full scale 'war' between the two 23 groups for which there had been no truce by September 2, 2008," when the alleged murder occurred. 24 Gov't Opp'n Br., 17:19-24.

25 Ablett argues that evidence of the Laughlin incident is irrelevant to showing that the 26 Mongols are a racketeering enterprise because the government previously prosecuted members of 27 the Hell's Angels on the theory that they initiated the violence. Characterizing the prior prosecution 28 as inconsistent with the government's current position, Ablett maintains that exclusion of the

Case3:09-cr-00749-RS Document224 Filed01/09/12 Page10 of 15

relevant evidence is appropriate pursuant to Rules 402 and 403, the doctrines of due process and judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742 (2001) (discussing judicial estoppel). In support of this argument, Ablett relies on a press release issued by the U.S. Attorney's Office in Nevada, announcing plea agreements with some of the Hell's Angels defendants, that states "[t]his office brought federal criminal charges based on substantial evidence that members of the Hell's Angels, operating as part of a racketeering enterprise pursuant to a conspiracy, caused the violent melee." Ex. 1. to Def.'s Mot. to Exclude (Dkt. No. 207).

That statement, however, does not rise to the level of exculpating the Mongols, and there is nothing logically inconsistent about the government's assertion that both the Mongols and the Hell's Angels engaged in violence that constituted racketeering, even if the Hell's Angels "caused" the confrontation. As a result, judicial estoppel is plainly inapplicable. Furthermore, evidence of the Mongols' participation in the incident in Laughlin is relevant, and probative, of the Mongols' status as a racketeering enterprise. At oral argument, Ablett suggested that establishing at trial what occurred in Laughlin could take days, and argued that the government has unfairly burdened the defense by producing voluminous amounts of related evidence. These arguments are unpersuasive; there has been sufficient time for Ablett to review the evidence. Finally, Ablett challenges the government's decision to offer the Laughlin incident as an instance of the Mongols' racketeering under Rule 403. Evidence from Laughlin, he maintains, lacks probative value because the confrontation occurred in 2002, when the Mongols were under different leadership, and therefore does not establish that the Mongols were a racketeering enterprise at the time of the alleged murder. To the extent the jury agrees with the defense on this question, that is the government's risk. It is, however, entitled to present racketeering evidence of its choosing.

Completing his objection under Rule 403, Ablett maintains that evidence of the events at Laughlin is also prejudicial because he was not there and was not even a member at the time. As the Court has previously observed, there is no requirement that Ablett personally participate in the predicate racketeering acts, and proving the existence of an enterprise engaged in serious crimes necessarily entails some risk of prejudice to defendant. *United States v. Byrd*, No. 08-5557, 2010 WL 2135645, at *1 (2d Cir. May 28, 2010). Here, those risks have been minimized. The

No. CR 09-00749 RS
ORDER RE: PRETRIAL MOTIONS
10

government emphasizes that the evidence it seeks to introduce consists of testimony by two witnesses, several minutes of video surveillance, and several photos, none of which is especially graphic or suggests the violence was one-sided. As a result, Ablett's motion to exclude evidence of the Laughlin incident is denied. The defense, of course, may elicit by way of testimony or stipulation that Ablett was neither present in Laughlin nor a Mongols members at that time.

Given that evidence of the Laughlin incident is to be admitted, Ablett requests that the U.S. Attorney's press release also be admitted as an admission of a party opponent, pursuant to Federal Rule of Evidence 801(1)(2)(D). As a threshold matter, to the extent the press release makes reference to sentences imposed on participants at the Laughlin melee, such material must be redacted so as not to confuse or mislead the jury regarding sentencing exposure to which Ablett may be subject. Once redacted, the press release may be used for impeachment purposes or may potentially be admissible on other grounds depending upon the testimony elicited at trial.

### 8. Motion for disclosure of other statements by alleged coconspirators

Ablett requests disclosure of several specific categories of information concerning alleged coconspirators declarants.[6] Specifically, he asks the government to disclose: (1) "copies of an entire unredacted statement in which the coconspirator made false or inconsistent statements to authorities concerning any aspect of the Mongols Motorcycle Club, or the declarant's involvement in any criminal activity, or his knowledge of criminal activity by any person who was a member or associate of the Mongols Motorcycle Club"; (2) "[c]opies of the criminal history (NCIC rap sheet) of each declarant"; and (3) "[c]opies of any plea agreement or cooperation agreement entered into between a declarant and any state or federal agency that provided the declarant with any benefit, including a reduction and/or dismissal of certain charges, a promise of a certain sentence if approved by the sentencing court, dismissal or reduction of charges for a third party, placement in any witness protection program and any monetary benefit or retention of intellectual property rights."

Ablett apparently seeks discovery of these materials for impeachment purposes, pursuant to Federal Rule of Evid. 806, which provides that when a coconspirator statement is admitted, the

---

[6] Originally, Ablett requested three broader categories of statements from all coconspirator declarants. In his reply brief, however, he narrowed his request.

"declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness," including evidence of an "inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." Of course, whether statements made by alleged coconspirators are admissible for impeachment purposes, just as a testifying witness' statements would be, is an entirely different question from whether such statements must be produced by the prosecution.

Ablett suggests that "some" of the requested statements must be produced pursuant to the Jencks Act, 18 U.S.C. § 3500. The government acknowledges that it must comply with the Jencks Act, but points out that the plain language of the statute suggests it applies only to "a witness called by the United States [who] has testified on direct examination." 18 U.S.C. § 3500. To the extent that Ablett suggests a coconspirator declarant who is treated like a testifying witness for purposes of the Federal Rules of Evidence must also be treated like a testifying witness under the Jencks Act, his contention lacks support. *See, e.g., United States v. Williams-Davis*, 90 F.3d 490, 513 (D.C. Cir. 1996) ("that a declarant is treated as a witness for purposes of 801(d)(2)(E) or Rule 806 does not mean he becomes one for purposes of the Jencks Act"), *and United States v. Shyne*, 617 F.3d 103, 107-08 (2d Cir. 2010) (same). Ablett's argument that Federal Rule of Criminal Procedure 16 provides a basis for compelled disclosure is similarly misplaced. Although this District's Local Rule 16-1(c)(4) requires the prosecution to disclose summaries of co-conspirator statements sufficient to permit a ruling on the statement's admissibility, the Federal Rules of Criminal Procedure do not require the government to produce all statements made by any alleged co-conspirator.

Alternatively, Ablett argues that *Brady* and *Giglio* require the prosecution to disclose exculpatory and impeachment evidence concerning non-testifying, alleged coconspirators whose statements are admitted under Rule 801(d)(2)(E). For this proposition, Ablett relies on a recent decision in this district. *United States v. Flores*, No. 08-0730, 2011 WL 1100137, at *1-3 (N.D. Cal. Mar. 24, 2011). *See also United States v. Morrow*, No. 04-355, 2005 WL 3163806, at *9 (D.D.C. Apr. 13, 2005). As *Flores* recognizes, the Ninth Circuit has yet to pass on this precise issue, and other Circuits remain somewhat divided. *Compare United States v. Jackson*, 345 F.3d 59,

70-71 (2d Cir. 2003) (government's obligations under *Brady* and *Giglio* extends to non-testifying witnesses), *with United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (*Giglio*, unlike *Brady*, only applies to witnesses called to testify at trial), *and United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (no duty to disclose grant of immunity under *Giglio* because witness was not called).

Together, *Brady* and *Giglio* stand for a "self-executing responsibility" on the part of the prosecutor to identify and disclose, prior to trial, evidence that tends to exculpate the defendant or serves to impeach a government witness' credibility. *Flores*, 2011 WL 1100137, at *1. Satisfaction of its *Brady* and *Giglio* obligations is always incumbent upon the prosecution, as the government acknowledges here. Therefore Ablett's request for an order compelling the prosecutor to disclose materials pursuant to *Brady* and *Giglio* must be denied. That said, the government remains under an obligation to disclose materials it believes are implicated by *Brady* and *Giglio* for all coconspirator declarants, including any relevant materials that may be contained within the types and categories of information that Ablett has specifically identified and requested. In other words, if, for example, an inconsistent statement by a coconspirator happens to be found in a plea agreement with the government, such information must be disclosed.

9. <u>Motion to suppress coconspirator statements and evidence of alleged racketeering</u>

Ablett also moves to suppress coconspirator statements admissible under Rule 801(d)(2)(E) and other evidence of alleged racketeering acts. As for the coconspirator statements, the defense must identify the specific statements to which Ablett objects **by January 13, 2012.** This aspect of defendant's motion will then be taken under submission.

To the extent that Ablett moves to exclude other evidence of alleged racketeering on the grounds that "the government is seeking to introduce evidence that has no connection whatsoever to Christopher Ablett," these arguments have already been addressed and defendant advances no basis for reconsideration. Def.'s Mot. to Exclude, 2:5-6 (Dkt. No. 210). As previously noted in the Court's October 21, 2011 order, although Rule 403 is fully in force, there is no legal requirement that Ablett personally participate in particular racketeering acts. Ablett suggests that the government must at least prove that he agreed to participate in a criminal conspiracy, but the language of the VICAR statute does not require an agreement. In addition, with the exception of the

Laughlin incident, Ablett has not identified the predicate racketeering acts he believes should be excluded, therefore it is impossible to evaluate his claim that any particular alleged activity is too attenuated or prejudicial to be admitted under Rule 403. Accordingly, his motion will be denied.

### B. Government's motion for an anonymous jury

At oral argument the parties agreed to meet and confer to resolve the government's motion for an anonymous jury. Accordingly, the motion will be denied without prejudice subject to the submission of a stipulated protocol regarding jury selection and operation.

## III. CONCLUSION

For the reasons explained above, defendant's motions are resolved as follows:

(1) the motion for a bill of particulars is denied;

(2) the motion to suppress statements of defendant is denied as moot;

(3) the motion to dismiss the indictment is denied;

(4) the motion to exclude drug identification testimony, or alternatively, for a *Daubert* hearing, is denied;

(5) the motion to suppress evidence that Mongols members discussed financing defendant's legal defense in this case is denied, however, by stipulation or otherwise evidence will be admitted that the Mongols never actually solicited funds or made any payments to defend Ablett in this case, and that Ablett's counsel have not received any funding from the Mongols;

(6) the motion to exclude expert testimony about the autopsy and fingerprint evidence is denied;

(7) the motion to suppress evidence of the 2002 incident in Laughlin, Nevada is denied, however, evidence will be admitted by stipulation or otherwise that Ablett was not present at the Laughlin incident and was not a member of the Mongols in 2002, and the Nevada U.S. Attorney's press release, once redacted, may be used for impeachment or other appropriate purposes;

(8) the motion for disclosure of other statements by alleged coconspirators is denied except insofar as the government remains subject to *Brady* and *Giglio* disclosure obligations in

connection with coconspirator declarants, and must disclose any such information which may be included in the types of documents specifically identified in Ablett's request;

(9) the motion to suppress coconspirator statements and evidence of alleged racketeering is denied insofar as Ablett seeks to suppress unspecified racketeering acts; defendant must identify the statements he believes should be excluded **by January 13, 2012**, at which point the remainder of the motion will be taken under submission.

The government's motion to strike is denied, and its motion for an anonymous jury is to be resolved by agreement of the parties, with the Court's approval.

IT IS SO ORDERED.

Dated: 1/9/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE